UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

Clifton Little
AKA Clifton X,

                Plaintiff,

-AGAINST-

TREVAR A. SOULIA, B. MASON, ERIC TAFT,
K. DENNY, J. STEWARD, M. FRENCH, J.
HOLLAND, J. DEYO, Nurse SHAWN BLEAU

                Defendants.

9:19 Civ. 263
(TJM/TWD)

SECOND AMENDED
COMPLAINT

JURY TRIAL: YES



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
MAY 28 2020
AT_____ O'CLOCK_____
John M. Domurad, Clerk - Syracuse

## I. Parties in this complaint:

**A. Plaintiff:** Clifton Little AKA Clifton X
Din #: 14A0447
Facility: Washington Correctional Facility
       72 Lock 11 Lane
       P.O. Box 180
       Comstock, New York 12821-0180

**B. Defendant No. 1:** TREVAR A. SOULIA
JOB OR TITLE:    Correction Officer
EMPLOYER:       NEW YORK STATE DEPARTMENT OF CORRECTIONS
                 AND COMMUNITY SUPERVISION (Clinton C.F. Main)
ADDRESS:        Clinton Correctional Facility(Main)
                 1156 Route 374, Cook Street
                 P.O. Box 2001
                 Dannemora, New York 12929-2001

**Defendant No. 2:** B. MASON
JOB OR TITLE:    Correction Sergeant(Sgt.)
EMPLOYER:       NEW YORK STATE DEPARTMENT OF CORRECTIONS
                 AND COMMUNITY SUPERVISION (Clinton C.F. Main)
ADDRESS:        Clinton Correctional Facility(Main)
                 1156 Route 374, Cook Street
                 P.O. Box 2001
                 Dannemora, New York 12929-2001

**Defendant No. 3:** ERIC TAFT
JOB OR TITLE:    Correction Officer
EMPLOYER:       NEW YORK STATE DEPARTMENT OF CORRECTIONS
                 AND COMMUNITY SUPERVISION (Clinton C.F. Main)
ADDRESS:        Clinton Correctional Facility(Main)
                 1156 Route 374, Cook Street
                 P.O. Box 2001
                 Dannemora, New York 12929-2001

Defendant No. 4: K. DENNY
JOB OR TITLE:      Correction Officer
EMPLOYER:          NEW YORK STATE DEPARTMENT OF CORRECTIONS
                   AND COMMUNITY SUPERVISION (Clinton C.F. Main)
ADDRESS:           Clinton Correctional Facility (Main)
                   1156 Route 374, Cook Street
                   P.O. Box 2001
                   Dannemora, New York 12929-2001

Defendant No. 5: J. STEWARD
JOB OR TITLE:      Correction Officer
EMPLOYER:          NEW YORK STATE DEPARTMENT OF CORRECTIONS
                   AND COMMUNITY SUPERVISION (Clinton C.F. Main)
ADDRESS:           Clinton Correctional Facility(Main)
                   1156 Route 374, Cook Street
                   P.O. Box 2001
                   Dannemora, New York 12929-2001

Defendant No. 6: M. FRENCH
JOB OR TITLE:      Correction Officer
EMPLOYER:          NEW YORK STATE DEPARTMENT OF CORRECTIONS
                   AND COMMUNITY SUPERVISION (Clinton C.F. Main)
ADDRESS:           Clinton Correctional Facility (Main)
                   1156 Route 374, Cook Street
                   P.O. Box 2001
                   Dannemora, New York 12929-2001

Defendant No. 7: J. HOLLAND
JOB OR TITLE:      Correction Sergeant (Sgt.)
EMPLOYER:          NEW YORK STATE DEPARTMENT OF CORRECTIONS
                   AND COMMUNITY SUPERVISION (Clinton C.F. Main)
ADDRESS:           Clinton Correctional Facility (Main)
                   1156 Route 374, Cook Street
                   P.O. Box 2001
                   Dannemora, New York 12929-2001

Defendant No. 8: J. DEYO
JOB OR TITLE:      Correction Officer
EMPLOYER:          NEW YORK STATE DEPARTMENT OF CORRECTIONS
                   AND COMMUNITY SUPERVISION (Clinton C.F. Main)
ADDRESS:           Clinton Correctional Facility (Main)
                   1156 Route 374, Cook Street
                   P.O. Box 2001
                   Dannemora, New York 12929-2001

Defendant No. 9: Nurse SHAWN BLEAU
JOB OR TITLE:      Nurse
EMPLOYER:          NEW YORK STATE DEPARTMENT OF CORRECTIONS
                   AND COMMUNITY SUPERVISION (Clinton C.f Main)
ADDRESS:           Clinton Correctional Facility (Main)
                   1156 Route 374, Cook Street
                   P.O. Box 2001
                   Dannemora, New York 12929-2001

## II. Basis for Jurisdiction:

Plaintiff, pro se, brings this action against defendants in their individual and official capacity under 42 USC 1983, for the deprivation of his rights and privileges secured by The Constitution of the United States of America, New State Constitution, as well as, New York State Laws, Correctional Laws, Human Right Laws and Federal Laws while being held in the custody and under the care of all defendants at Clinton Correctional Facility (Main), a New York State Department of Corrections and Community Supervision Facility as a wrongfully convicted prisoner.

The federal and state constitutional and/or statutory right that were violated by one or more of the defendants' given rise to this action are contained in the Statement of Facts and attached papers to this complaint.

## III. Statement of Facts:

1) Plaintiff, Clifton Little AKA Clifton X (herein after plaintiff) is, at all times relevant hereto, a wrongfully convicted prisoner in the care, custody, and control of the defendants' in this action from October 3, 2016 through and until August 31,2018.

2) All defendants in this action owed plaintiff a duty of care with respects to his safety and well being physically, mentally, emotionally and spiritually. All or one defendant did in fact not uphold their sworn duty bestowed upon them by their employer as it relates to plaintiff's herein claims and injuries.

3) At the time of events giving rise to the claims and injuries mentioned in this action, plaintiff was and still is a register Muslim and active member  or citizen of the NATION OF

-3

ISLAM (herein after N.O.I.) with very sincere religious beliefs that mandate him to study and read the Holy Qur'an, Final Call Newpapers, Message To The Blackman in America, How To Eat To Live (Books 1 and 2), The Fall Of America, Our Saviour Has Arrived, 20 Actual Facts, Student Enrollment (1-10), English Lesson C1 (1-36) Lost found Muslim Lessons No. 1 (1-14), and Lost Found Muslim Lessons No. 2 (1-40), and The Restrictive Laws of Islam, as well as, make salah (prayer) five or more times a day after the preformance of wudu (cleaning of the mouth, nose, ears, hands, arms, head, and feet prior to salah) or prayer will not be accepted by Allah(God).

4) Plaintiffs' religious beliefs also mandates him to be in compliance at all times with his general orders which are as follows:

### GENERAL ORDERS

1) To take charge of this post (body) and all Temple (Mosque) property in view.

2) To walk my post(assigned area) in a perfect manner, keeping always on the alert.

3) To report all violations of orders I am instructed to enforce.

4) To report all calls from posts (assigned area) more distant from the Temple (Mosque) than my own.

5) To quit my post (assigned area or given duties) only when properly relieved.

6) To receive, obey and pass on to the sentinel, who relieves me, all orders from the commanding officer, officer of the day, and non-commissioned officers of the Guards only.

7) To talk to no one, only in the line of duty.

8) In case of disorder, to give the Alarm.

9) To allow no one to commit a nuisance on or near my post.

10) In any case not covered by instructions, call the Guards.

4

11) To salute all officers, and Standards
not cased.

12) To be especially watchful at night,
during the time of meeting.

5) Plaintiff at all times given rise to the events mentioned throughout this complaint was a ranking member of F.O.I (The Military Training Unit of N.O.I.) and as such mandated not to miss any service or study class with respect to N.O.I.

6) According to Plaintiff's religious beliefs, performing wudu requires clean water and without cleaning with clean water salah cannot be offered or made to Allah(God).

7) Plaintiff bears witness that Allah(God) came in the person of Master Fard Muhammad. Plaintiff also bears witness that The Most Honorable Elijah Muhammad is His Messenger.

8) Plaintiff as a student F.O.I. further bears witness to a powerful reminder of Allah(God) and His Messenger in our mist who is referred to as the Rock because no matter what they throw at him he remains strong, and that man is The Honorable Minister Louis Farrakhan.

9) Plaintiff a member of the Lost Found Tribe of Shabazz (N.O.I.) acknowledges that salah is not an option, it is madatory in order for him to be closer to His original state of Conscienceness which is - The Maker, The Owner, The Cream of the planet earth, God of the Universe and the non preformance of salah and missing a N.O.I. service or class stops this from manifesting.

10) Plaintiff did submit the required religious form in complaince with D.O.C.C.S. rules, regulations, and directives, with Student Minister Courtney Muhammad (N.O.I. Chaplin) at Elmira Correctional Facility, self declaring to be a Muslim member of The Nation of Islam, which means that [he] is a follower of The

5

Honorable Elijah Muhammad.

11) Plaintiff was approved by D.O.C.C.S. and placed on a registered list in D.O.C.C.S. data base as being a Muslim of N.O.I. Therefore, was and still is entitled to attend, observe, and participate in all N.O.I. services, practices, and events.

12) Plaintiff since being registered with N.O.I. has participated in all services, practices, events, and classes, except times when defendants prevented such attendance, as required by his religious beliefs.

13) Defendant B. MASON (herein after MASON) did know that plaintiff is a Muslim with the N.O.I. because plaintiff informed him on May 26,2017, in person, by stating : "my water to my cell (D-3-32) has been shut off by you or your direction to since yesterday (May 25,2017) and I need it to be put back on so that I will be able able to flush bodily waste that has been sitting in my toilet for almost an entire day... this is causing me complications breathing (asthma attack) due to having to breath in the fumes of fecus produced by the fecus in my toilet... I am an asthmatic and you knew this since yesterday... I also need for the water to my sink to be put back on so that I can use the bathroom, clean my body and make prayer as I am required to as being a Muslim of the N.O.I."

14) MASON ridiculed plaintiff about being Muslim in the N.O.I. ; laughing at plaintiff and telling plaintiff " being a Muslim makes you my enemy" and then started to laugh again.

15) MASON did have the ability to himself turn plaintiff's water back on or the authority or power to order someone else to turn the plaintiff's water back on or cause to have plaintiff moved to another cell with a working toilet and sink on May 26,2017. And

6

MASON did not honor plaintiff's request for relief.

16) Plaintiff's water supply to his cell (D-3-32) remained shut off after speaking with MASON ON May 26,2017 in medical during an emergency medical visit until the forenoon of May 28,2017 when D Block 3 company officer on May 28,2017 turned it on after plaintiff's request.

17) Plaintiff's water was shut off on May 25,2017 at approx 6:45 PM by MASON directing defendant M. FRENCH to cut it off.

18) Due to MASON and FRENCH actions as a whole or in part on May 25,2017 at approx. 6:45 PM through May 28,2017 in the forenoon plaintiff was unable to drink water, perform wudu, make salah, urinate or defecate, breathe and sleep. These deprivations further caused plaintiff to be fatigue, insomia, an asthma attack in which plaintiff had to use his recuse inhaler more than one time a day, chronic chest pains, stomach cramps, emotional distress, mental anguish, spiritual distress and anguish, fear and alarm, headaches and closeness to Allah(God).

19) MASON and FRENCH had no legal reason or justifiable reason to cut plaintiff's water to his cell(D-3-32) off and no legal ground or standing to keep plaintiff's water shut off from May 25,2017 - May 28,2017. Nor did plaintiff reuqest that his water be shut off at anytime to MASON or FRENCH or any other D.O.C.C.S. staff.

20) Plaintiff did hand defendant J. STEWART on May 29,2017 an envelop (the front of the envelope had the following: I.G.R.C. Grievance Complaint" as well as the plaintiff's full name and DIN in which defendant looked at it to verify that it was plaintiff's mail being handed to him and not another inmates mail that plaint was requesting to be sent out. Said grievance complaint was complaining about and seeking redress for the criminal assault of

his person that occured on May 25,2017 at approx. 7 PM in and outside of D-3-32 cell and in the back on D Block's 3 company at Clinton Correctional Facility (Main). Additionally plaintiff did complain about in said grievance - denial of medical care for the injuries he substained from the assualt of May 25,2017, denial of religion based on his water being turned off and him not being able to perform **wudu** so he can make salah required by his religious beliefs, and inhumane prison condictions based on water being shut off in his cell depriving him of flushing bodily waste down his toilet and forcing him to inhale fecus fumes and or toxic fumes produced by such waste remaining inside of toilet for long period of time. SEE ATTACHED GRIEVANCE COMPLAINT DATED MAY 29,2017(**this is the exact grievance complaint that was handed to STEWART on May 29,2017 in the envelope addressed to I.G.R.C.**).

21) Plaintiff did at the same time her handed STEWART that complaint addressed to I.G.R.C. handed said defendant envelopes addressed to **N.Y.S. ATTORNEY GENERAL OFFICE, KAREN BELLAMY (D.O.C.C.S. GRIEVANCE DIRECTOR IN ALBANY), OFFICE OF SPECIAL INVESTIGATIONS(D.O.C.C.S.), ANTHONY ANNUCCI (D.O.C.C.S. ACTING COMMISSIONER), M. KIRKPATRICK(CLINTON C.F. MAIN SUPERINTENDENT), GOV. ANDREW CUOMO, CLINTON COUNTY DISTRICT ATTORNEY'S OFFICE,** and plaintiff's appellate attorney **MATTEW WASSERMAN** to be mailed out because plaintiff was keeplock confined and unable to place it in the box labled USPS located at the 1st Man desk in D-Block on May 29,2017. STEWART verified that it was plaintiff's mailed being given to him to be mailed out by examining the name and din of plaintiff through his inmate I.D. card and checking it with the name and din on the envelopes.

22) Plaintiff, prior to handing STEWART any envelopes on

May 29,2017 plaintiff asked STEWART what the procedure was for a keeplock inmate to send out mail and STEWART informed plaintiff in order to send out mail when you are on keeplock you will have to hand me the mail and I'll drop it in the mailbox by my desk (1st Man). **Plaintiff** then handed STEWART his mail.

23) Plaintiff's attorney recieved the mail in question that was addressed to him and responded. All other parties in which the grievance complaint was suppose to be delivered to did not recieve it due to STEWART not placing those letters in the mailbox and those parties are:

        a) I.G.R.C. Clinton Main
        b) Karen Bellamy
        c) Gov. Andrew Cuomo
        d) M. Kirkpatrick
        e) N.Y.S. Attorney General
        f) Anthony Annucci
        g) Office of Special Investigation
        h) Clinton County D.A.

24) STEWART did hinder or prevent or stop plaintiff from seeking redress or being granted relief for his complained about constitutional violations contained in this complaint with respect to excessive force, deliberate indifference to a serious medical need, inhumane prison conditions, and deprivation of religion by destroying or otherwise tampering with plaintiff's grievance complaint addressed to the parties mentioned in paragraph 23 sub. div. a-h above.

25) Plaintiff did send out follow-up letters inquiring about his complaint to the parties mentioned in par. 23 sub. div. a-h and those letters went unanswered.

26) Plaintiff wrote I.G.R.C. requesting that his grievance dated May 29,2017 be appealed to the Superintendent on Jun 26,2017 and that request went unanswered by I.G.R.C. **SEE ATTACHED APPEAL**

LETTER ADDRESSED TO I.G.R.C. DATED JUNE 26,2017.

27) Plaintiff wrote I.G.R.C. again requesting that his grievance dated May 29,2017 that he requested to be appealed to Superintendent on June 26,2017 be appealed to CO.R.C. on July 26, 2017 and that appeal request went unanswered. SEE ATTACHED APPEAL LETTER TO I.G.R.C. DATED JULY 26,2017.

28) On July 27,2017, defendant J. HOLLAND investigating grievance # CL-71597-17 for the denial of plaintiff's right to exercise, met with plaintiff in Lower F Block 1 Company 34 Cell and told plaintiff that STEWART DISPOSED OF PLAINTIFF'S grievance complaint addressed to the individuals mention in par. 23 sub. div. a-h of this complaint. Plaintiff asked HOLLAND why would STEWART do such a constitutional violation of such and HOLLAND stated: " we (referring to himself, STEWART, and other security staff at Clinton C.F. Main) do not tolerated those type of grievances, and will not cause to have them filed against us, we family and family sticks together here... it is enough heat on us already (HOLLAND IS REFERRING TO AN INVESTIGATION THAT WAS ON_GOING ABOUT AN INMATE WHO DIED).

29) On May 25,2017, plaintiff was assaulted by MASON, TAFT SOULIA, DENNY and FRENCH in and outside of D-3-32 cell at approx. 7 PM.

30) Plaintiff was urinating in his toilet in D-3-32 cell at approx. 7 PM on May 25,2017. Plaintiff after urinating went to go flush his toilet and was stopped by Soulia. ~~Soulia witnessing~~ Soulia witnessing plaintiff attempt to flush his not working toilet ordered plaintiff to back up to his cell door for a cell search. Plaintiff complied with SOULIA'S DEMAND. Upon complying SOULIA entered plaintiff's cell and grabbed him from behind in a

10

rear naked chockhold, restricting plaintiff's airway causing plaintiff to have an asthma attack while plaintiff's penis was fully exposed.

31) Plaintiff's penis was fully exposed during the assault of his person by SOULIA, TAFT, FRENCH, DENNY, andMASON inside of his cell (D-3-32) due to SOULIA witnessing plaintiff urinating and instructing plaintiff to immediately backup to his cell door as a direct order.

32) Plaintiff had to follow the direct order given by SOULIA and did follow the direct order immediately in compliance with D.O.C.C.S. inmate rule book orders.

33) Plaintiff did not know prior to urinating in his cell toilet that the water supply to his entire cell was cut off. Plaintiff gained this knowledge of the toilet not working when MASON attempted to flush plaintiff's asthma pump down the toilet. And FRENCH told MASON the toilet is off and MASON said "Oh we did do that."

34) Plaintiff during the assault (chockhold) placed on him by SOULIA did managed to get a few of his fingers between the arm of SOULIA and let out a cry for help stating help me please.

35) SOULIA  attempted to supress plaintiff's pleas of help by slamming plaintiff face first on his cell bed and that is when TAFT, DENNY, FRENCH, and MASON entered into plaintiff's cell.

36) Plaintiff hearing other people enter his cell(due to at least one of the officers baton striking the iron cell gate) believed that helped had arrived and the assault would stop but it did not. The assault continued by SOULIA. TAFT, DENNY, MASON and FRENCH who were prsent did not stop SOULIA from further assaulting plaintiff In fact, all of them joined the assault of plaintiff each taking

11

turns kicking the plaintiff on the left side of his rib cage area
specifically, TAFT is the defendant who administered this form of
the assault on plaintiff first and the others pushed TAFT out of
their ways so they could start kicking plaintiff and all the defendants
succeed in doing this.

37) FRENCH and DENNY thereafter grabbed plaintiff off the
bed in which plaintiff was partially on from being slammed there
by SOULIA, by the collar of plaintiff's personally owned red
sweatshirt and threw him to the floor of his cell and commenced
to punch the plaintiff repeatively in his face, neck and head
until plaintiff stop screaming for help and went unconscious.

38) Plaintiff was unconscious for at least 4minutes or more
during the assault while MASON was present and MASON as a supervisor
to the defendant officers TAFT, SOULIA, DENNY, and FRENCH did not
stop these defendants from further assaulting plaintiff though
plaintiff was visible unconscious. MASON watched and encouraged
for the assault to continue by stating "get that muslim nigger"
these words plaintiff heard MASON speak because he did regain
consciousness during that time, but it did not last that long due
to MASON orders to continue the assault being administered on
 plaintiff and the assault continued by TAFT, DENNY, and FRENCH
which rendered plaintiff unconscious for the second time.

39) When plaintiff fully regained consciousness he realized
that he had now been handcuffed. The handcuffs were placed on
plaintiff's wrist extremely tight by TAFT cutting off blood circulation
to both of plaintiff's hands causing plaintiff to now feel very
dizzy.

40) In a dizzy state plaintiff being pulled off the floor
of his cell by TAFT witnessed MASON putting on a pair of blue leather

gloves.

41) MASON while putting on his gloves stated to plaintiff
"Do you know what I'm going to use these for"? Plaintiff upon
failing to respond to MASON's question was then chocked by MASON.
MASON chocked plaintiff with his right hand restricting plaintiff
breathing causing an asthma attack to occur. While chocking
plaintiff MASON told plaintiff not to tell anyone about what happen
in and outside of plaintiff's cell, informing plaintiff that he
would be oranged taped and painted and then killed if he mentioned
any assault administered by MASON, DENNY, TAFT, FRENCH, and SOULIA
occurred. MASON then went on further stating to plaintiff while
still chocking plaintiff... " your death will be covered up because
we going to claim you had a weapon and tired to attack one of my
officers while refusing a direct order to stop."

42) ORANGED TAPED AND PAINTED is or was a term used by MASON
to describe the use of a chemical agent known as mace or pepper
spray on a person.

43) Plaintiff's legs went completely limp while MASON chocked
him. Plaintiff was unable to breathe due to MASON's grip on his
throat. Plaintiff fearing that he would die at this point, pointed
towards his asthma inhaler and requested to MASON and TAFT to grab
the inhaler and place it to his lips so he could take two puffs
of the medication.

44) Prior to plaintiff recieving the medication, [he] was
dragged by TAFT and MASON by the arms to the rear of 3 company in
D-Block and surrounded by SOULIA, DENNY, and FRENCH.

45) One plaintiff was completely surrounded by DENNY, FRENCH
SOULIA, TAFT and MASON, TAFT called plaintiff a weak defenseless
nigger for complaining about not being able to breathe and feeling

13

dizzy.

46) Thereafter, SOULIA placed plaintiff's asthma inhaler to plaintiff's mouth and administered two puffs of the medication, though he had no medical training nor experience in administering of asthma medication.

47) After plaintiff was given this dose of medication by SOULIA, SOULIA instead of placing the cap back on plaintiff's asthma inhaler sprayed plaintiff in the eyes with the inhaler and asked plaintiff if it burns. Plaintiff screaming in pain from SOULIA's improper use of plaintiff's asthma inhaler, spraying it in plaintiff's eyes and other parts of his face caused TAFT to follow through partially on MASON's threat of further harm. TAFT in order to impress MASON tighten the handcuffs further on plaintiff wrist. This decreased the circulation of blood to plaintiff's hands and caused plaintiff not to be able to feel his fingers and hands.

48) Plaintiff's vision became very blurry and he began feeling extrememly dizzy to due TAFT tightening the handcuffs on his wrist Plaintiff did his best to plead with TAFT and MASON for the handcuffs to be loosen stating to them in shortness of breath "my body is shutting down" and MASON being TAFT's supervisor did nothing to stop the illegal use of handcuffs by TAFT on plaintiff.

49) MASON instead of stopping this assault grabbed plaintiff by the throat in a front one handed chockhold and stated to plaintiff "stop screaming or you won't scream again." Plaintiff out of fear complied with the instruction to not plead for help.

50) MASON then told plaintiff "now we are going to take you to medical and you are going to state that you have no injuries and that you used your inhaler twice." Plaintiff out of fear and

14

in the presence of TAFT, MASON and Nurse J. Laporte signed a
document stating that only two puffs of inhaler used and no
injuries. Prior to signing said document at medical but in the
presence of the named individuals in this paragraph MASON told
plaintiff "do what I said boy.":Boy is a racist term used by Jim
Crow era whites and those taught by Jim Crow era whites to
describe Black men. MASON did use this term within the context
mentioned above to plaintiff and plaintiff did and still understands
that to be the case.

51) MASON's threats of further assault and the further assault
of plaintiff after he complained about the cuffs on his wrist being
to tight which caused lack of proper blood circulation to his hands
prevented or stopped plaintiff from receiving medical care for his
injuries, specifically, the burning sensation of his eyes and face
from SOULIA's misuse of plaintiff's asthma inhaler on plaintiff
and the numbness of his hands and fingers due to TAFT's misuse of
the metal wrist restraints.

52) Plaintiff out of fear of further assault did not report
his complete injuries from the assaults that occurred on May 25,2
at approx. 7 PM to J. Laporte(Nurse) when he was seen by her on
May 25,2017 after the excessive use of force.

53) MASON and TAFT were both present when plaintiff met with
J. Laporte (Nurse) at medical after the excessive use of force.

54) Plaintiff on May 26,2017 woke up with severe chest pain
labored breathing, and multiple visible contusions to his rib cage
area (left side) and requested to John Doe C.O. working on 3
company of D-Block to be taken to medical immediately to be
treated for his injuries and asthma attack that he was sufferring
Plaintiff prior to requesting medical attention did use his asthma

15

and said use did not render any relief.

55) Plaintiff on May 26,2017 after making his request for medical attention was taken out of his cell and placed on an orange strecher by two inmate D-Block porters and carried down a staircase inside of D-Block and then carried up another flight of stairs outside of D-Block and placed on a gurney in front of the medical department and pushed inside an elevator by John Doe D-Block

officer at taken upstairs to the 1st floor of the medical unit and seen by NURSE SHAWN BLEAU inside the first or second room on the right side of the unit. Plaintiff informed BLEAU what his injuries were, specifically, labored breathing, soreness in rib cage area on the left side, headache, numbness to his hands and fingers, contusions to both of his wrist and an asthma attack. Plaintiff also informed BLEAU tha he taken his asthma inhaler and it did not give him any relief. BLEAU asked plaintiff "How did you substain these injuries"? Plaintiff informed him that excessive force was used against him on May 25,2017 by TAFT, MASON, DENNY, SOULIA and FRENCH.

56) BLEAU had a duty of care to provide plaintiff with adequate medical care and to not disclose to non medical staff an medical information of plaintiff. BLEAU did not honor his duties, he left outside the medical examination room plaintiff was in and went to MASON and informed him that plaintiff was complaining about the injuries that MASON and other security staff caused plaintiff on May 25,2017. Upon returning to the exam room where plaintiff was BLEAU brought MASON with him and instructed plaintiff to describe his injuries again in front of MASON aand explain how they occured.

57) Plaintiff seeing MASON and remembering what happen to

16

him the day before for complaining and remembering the threat that MASON told him he would follow through on, informed BLEAU that he did not have any injuries and his breathing was fine. MASON did wink at plaintiff after plaintiff told BLEAU this.

58) BLEAU prevented plaintiff from exercising his right to receive medical treatment for his injuries by informing MASON of plaintiff's complaints and telling MASON about plaintiff's medical problems.

59) BLEAU did fill out a medical document prior to leaving the examination room to get MASON and took said document with him to get MASON and MASON did have said document in his hands when he entered the exam room with BLEAU, which MASON handed to BLEAU after plaintiff told BLEAU that he did not have any injuries and his breathing was fine.

60) Said document declared that the plaintiff did have labored breathing, contusions to rib and wrist area and that BLEAU did issue plaintiff 12 ibporfens for his complained about and problematic injuries. This was not proper medical care or treatment for none of his injuries.

61) BLEAU prior to going to get MASON and handing MASON a medical report of plaintiff's complained about injuries did exam plaintiff and took note of plaintiff's labored breathing, contusions and swelling to rib cage area and swelling and bruises on the plaintiff's hands and wrist.

62) BLEAU on May 26,2017 destroyed the medical document that would show forth plaintiff's injuries from the excessive use of force or at least conspired with MASON to destroy the document that he created at plaintiff's medical visit on May 26,2017 to prevent or otherwise frustrate plaintiff's right to medical care

17

plaintiff's right pursuant to F.O.I.L. and F.O.I.A. to obtain a copy of said medical records as proof of his injuries from the excessive use of force of May 25,2017, and plaintiff's right under 42U.S.C.1983 to seek redress.

63) BLEAU's action of destruction himself or acting with MASON in destroying said document of May 26,2017 medical visit prevented plaintiff from pursuing and succeeding on his claims of excessive force and inadequate medical care in the Northern District of New York. BLEAU and MASON knew that the destruction of this document would hide the truth of plaintiff's injuries that is a result of the excessive force of May 25,2017 at the hands of MASON, DENNY, TAFT, FRENCH, and SOULIA.

64) BLEAU's issuing of 12 ibprofens to plaintiff for an asthma attack(constriction of the smooth muscles surrounding the bronchi; inflammation and swelling of the tissues within the bronchial walls and the narrowing of the air passages) was against all medical professional norms and BLEAU knew that or should have known that and completely ignored his training and experience which caused plaintiff to return to his cell with labored breathing on May 26,2017.

65) BLEAU's issuing of 12 ibprofens to plaintiff for the numbness of his hands and fingers caused plaintiff to return back to medical days later. Plaintiff was unable to feel anything that he seen his hands grab this caused mental anguish and depression.

66) Plaintiff did seek through F.I.O.L. at Clinton's medical unit May 26,2017 medical document/medical evaluation sheet and was prevented from obtaining a copy due to BLEAU's and MASON's action as a whole or in part. The destruction of said document

18

violated plaintiff's right pursuant to F.O.I.L. and the F.O.I.A.

67) Plaintiff did write and and mail a grievance dated August 21,2017 to I.G.R.C. relating to the destruction of the medical document of May 26,2017 emergency visit to medical at Clinton C.F.(Main). SEE GRIEVANCE DATED AUGUST 21,2017.

68) Plaintiff on Sept. 18,2017 requested in writing to I.G.R.C. Supervisor that the grievance of August 21,2017 be sent the second level of the grievance process and the grievance number be provided to him as no response has been given, this went unresponsive by I.G.R.C. Supervisor. SEE APPEAL LETTER DATED SEPTEMBER 18,2017.

69) On Oct. 13,2017 plaintiff wrote I.G.R.C. Supervisor requesting that his unresponsive grievance appeal dated Sept. 18, 2017 for the destruction of medical document dated May 26,2017 be appealed to C.O.R.C. due to the second level of I.G.P. being unresponsive. SEE APPEAL LETTER DATED OCTOBER 13,2017.

70) The appeal dated Oct. 13,2017 to C.O.R.C. was not responded to.

71) TAFT on April 6, 2018 approached plaintiff's cell(B-2-9 and handed plaintiff mail from I.G.R.C. that he produced from his front right pants pocket. Said mail was a memorandum from I.G.R.C Supervisor (C. Gregory) stating that "the complaint dated May 29, 2017 is being returned..." Said grievance was not given to plaint by TAFT though said memo from Gregory cleared states that with said memo the grievance dated May 29,2017 is returned as it will not be honored. TAFT knew that said grievance was against him as well as other security staff that assisted or did not prevent him from assaulting plaintiff on May 25,2017 because he had it in his possession but did not give it to plaintiff as he should have

72) Plaintiff submitted a grievance on this mail tampering issue and staff misconduct with I.G.R.C. clerk. The I.G.P. filed this grievance on April 17,2018.

73) On April 12,2018, DEYO denied plaintiff his right to attend N.O.I. religious service by not opening plaintiff's cell when religious service was announced though plaintiff personally requested to attend N.O.I. service to DEYO when he came around with a "go around list"(this list is a list that company officers use to mark down request of inmates in their cells).

74) DEYO denied plaintiff the right to practice the tenants of his faith, in particular plaintiff's general orders which is To take charge...of all Temple (Mosque) property in view, To walk post (assigned area) in a perfect manner, keeping always on alert To quit post(assigned area or given duties) only when properly relieved; to receive, obey and pass on to the sentinel, who relieves me, all orders from the commanding officer, officer of the day, and non-commissioned officcers of the Guards only by not opening plaintiff's cell for N.O.I. service after plaintiff requested it to be opened for N.O.I. service.

75) DEYO denied plaintiff his right to practice the tenants of his faith when he did not let plaintiff out of his cell for N.O.I. service, plaintiff made DEYO aware that his cell was not opened for service and DEYO's response to plaintiff's second attempt to be let out for service was that he hated Black Muslims (the term Black Muslim has been associated with members of the N.O.I. community for over 60 years) and was not letting plaintiff attend service because plaintiff is a Black Muslim who hates white people.

76) DEYO further denied plaintiff his right to attend and

observe and practice the tenants of his faith in retilation for

plaintiff's attempt to file a grievance against DEYO's close

friend TAFT. DEYO knew about the grievance that plaintiff attempted

to have filed against TAFT because DEYO told plaintiff that TAFT

"told me about your grievance."

77) Plaintiff was instructed and mandated by a ranking N.O.[1]

Mosque offical on April 5,2018 to be at service on April 12,2018

to hold the post next to Minister Ronald Muhammed as said minister

delivered to the lost found memebers of the Shabazz Tribe an

important message from Minister Farrakhan. Plaintiff was unable

to preform this required duty of his faith due to DEYO not allowing

plaintiff to attend service on April 12,2018.

78) Plaintiff's belief is that when a post is let unguarded

it is a grave offense and a threat to the well being of the followers

of his faith. Therefore, DEYO preventing plaintiff from attending

service, left plaintiff's post unguarded and caused plaintiff to

be in violation of the tenants of his faith.

79) Plaintiff filed a grievance on this matter dated April

12,2018 which the I.G.R.C. clerk filed on April 17,2018.

80) The grievance for the denial of plaintiff's right to

practice, observe, attend and participate according to the tenant

of his faith was denied by Superintendent E. Bell on May 7,2018

and plaintiff appealed said denial on May 8,2018 to C.O.R.C.

81) Plaintiff's grievance for mail tampering and staff

misconduct was denied by E. Bell and plaintiff appealed such denial

to C.O.R.C.

82) As to all the claims presented in this complaint and

all the claims derived from the attachs pages to this complaint

plaintiff either completed all steps of the I.G.P. procedures or

one or more of the named defendants in this action prevented the
plaintiff from following the I.G.P. procedures or the I.G.P.
procedures was so unclear and confusing that plaintiff could
fully understand them.

83) BLEAU's action of destroying or not properly filing the
medical documents relating to plaintiff's visit on May 26,2017
stopped plaintiff from succeed on his claims of excessive use of
force against TAFT, SOULIA, MASON, DENNY, and FRENCH because
plaintiff cannot show all the injuries he suffered from the
excessive use of force of May 25,2017.

84) STEWART did hinder or otherwise stop plaintiff from
obtaining relief for his claims of excessive force, medical
deliberate indifference, denial of religion, and inhumane prison
condictions because plaintiff cannot prove that he complied with
the law of exhustation before bringing a lawsuit in a federal
court under 42 U.S.C. 1983.

85) All defendants have acted under color of state law at
all times relevant to this complaint.

86) Plaintiff's spiritual beliefs requires and otherwise
mandates him to NEVER leave a post unguarded because in addition
to the satefy and well being of the believers(N.O.I. service
attendees) he is charged with protecting and uplifting from the
mud of ignorance at all N.O.I. services, not being on post left
the believers who have not gained the sheild to protect them
against the ways of wickness and evil and injuried plaintiff in
the fact that he did not obtain a spiritual awakening of being
one with Allah(God) and fighting against the open enemy of God
and all rightueos servants of God.

87) Plaintiff at all relevant times in this action was

22

assigned the duty of delivering the message of Allah(God) to
the blind, deaf, and dumb. This required him to be at all service
and classes and at times speak at services, as well as, obtain
and maintain closeness to Allah(God), DEYO denied plaintiff this
right and as a result many believers fail victim to wrongdoing,
mistakes, and misunderstandings, as well as, plaintiff. Plaintiff
in fact lost faith at one point because of DEYO not allowing the
plaintiff to attend service and began using foul language. This
injury of the lack of spiritual closeness to Allah(God) plaintiff
still suffers to present in that he has used foul language against
those he loves such as the mother of his child, his sisters, and
at least one of his brother's. If DEYO did not prevent plaintiff
from attending service plaintiff would not be off the path of
Allah(God) and will not be suffering the lack of family support
because plaintiff spiritual believes that the only time you can
leave your post is when Allah(God) has directed you to and Allah
(God) did not grant plaintiff leave on that day for his post.

## Claims for Relief

88) The actions of defendants MASON, DENNY, TAFT, SOULIA
and FRENCH in using physical excessive force against plaintiff
without need or provocation, or in failing to intervene to stop
or prevent the misuse and abuse of authority and force, were done
maliciously and sadistically and constituted cruel and unusual
punishment in violation of the Eighth Amendment of the United
States Constitution.

89) The actions of defendants MASON, DENNY, TAFT, SOULIA
and FRENCH in using physical force against plaintiff without need
or provocation illustrated a disregard for the well being of the

plaintiff's health and safety in violation of correctional law, human rights law, DOCCS employee manual, thus, constituting the tort of assault and battery under the law of New York State. This court is respectfully requested to exercise the state law claims presented in this action because if this action is dismissed plaintiff will have no other available alternative remedies that will protect his interests.

90) The actions of MASON and DEYO in depriving plaintiff of exercising his right to religion and spiritual closeness to Allah (God), pressured plaintiff to commit acts that are forbidden by his religion (ex. Foul Language... Plaintiff's spiritual beliefs require him to be kind and good to all which means no foul language being used against a person) or prevented him from engaging in conduct or having religious experiences(hearing the word or message of Minister Farrakhan) mandated by his faith in violation of the First Amendment of the United States Constitution.

91) The actions of MASON and DEYO in depriving plaintiff of exercising his right to follow the tenents of his faith, were maliciously and intentional violations of correctional law, DOCCS Directives, DOCCS employee manual, human rights and constitutes the tort of denial of religious worship under the law of New York State.

92) The actions of SOULIA, TAFT, FRENCH, DENNY, MASON, and BLEAU in disregarding or preventing plaintiff from receiving medical care, or administering inadequate medical care to plaintiff were unneccessary and prevental and wanton inflictions of pain and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

93) The actions of SOULIA, TAFT, DENNY, MASON, FRENCH and

24

BLEAU in hindering medical treatment and care to plaintiff for his injuries, or administering inadequate medical care to plaintiff was in violation of correctional law, human rights law, DOCCS employee manual thus, constituting the tort of denial of medical care to a prisoner under the law of New York State.

94) The actions of BLEAU in failing to properly file or destroy the medical document of plaintiff's injuries as a result of the May 25,2017 assault of plaintiff's person constituted a denial of access to court in violation of the Firt Amendment of the United States Constitution.

95) The actions of BLEAU in failing to properly file or destroy the medical document of plaintiff's May 26,2017 medical emergency vist is a violation of HIPPA, Human rights law, DOCCS employee manual, F.O.I.L., F,I,O,A, thus, constituting the tort of denial of access to the court under the law of New York State.

96) The actions of BLEAU informing MASON  of plaintiff medical injuries violated HIPPA and frustrated the confindence of priviledge medical care.

97) The actions of TAFT, SOULIA and DEYO in retailing again plaintiff for exercising his right to seek redress through speech or conduct that is protected, were done knowingly and maliciously and constituted adverse actions in violation of the First Amendment of the United States Constitution.

98) The actions of TAFT, SOULIA and DEYO in retaliating against plaintiff for the exercise of his rights constituted the tort of retaliation for the exercise of rights under correctional law, DOCCS employee manual, Human rights law, DOCCS Directive and the law of the State of New York.

99) The action of HOLLAND in knowingly participating with STEWART unwritten policy or culture to destroy plaintiff's mail consisting of grievance complaints thus, hindering plaintiff access to court, and failing to intervene after knowing of the destruction of plaintiff's mail by STEWART, were intentional and constituted adverse actions and mail tampering in violation of the First Amendment of the United States Constitution.

100) The actions of MASON and FRENCH in turning off plainti water to his cell sink and toilet, or in failing to intervene in order to prevent an excessive risk to plaintiff's health, safety, and spirituality, were done maliciously and sadistically without need or provocation and constituted cruel and unusual punishment and denial of religion in violation of the First and Eighth Amendments of the United States Constitution, as well as, DOCCS employee manual, human rights law, correctional law, DOCCS directives and NYCRR, and New York State Constitution.

## RELIEF REQUESTED

WHEREFORE, plaintiff respectfully requests that the court grant the following relief or a jury after a trial:

A. ISSUE A DECLARATORY JUDGMENT STATING THAT:

1) The physical abuse and abuse of authority by MASON, DENNY, TAFT, FRENCH, and SOULIA violated the plaintiff's rights under the Eighth Amendment to the United States Constitution and constituted an assault and battery under New York State Law and Constitution, as well as, Human Rights Law, DOCCS Employee Manual, and Correctional Law.

2) MASON and FRENCH actions in depriving plaintiff of water

to his cell sink and toilet, deprived plaintiff was his right

to exercise his right to religion and spiritual closeness to

Allah(God), deprived plaintiff the right to drinking water,

deprived plaintiff the right to medical care, deprived plaintiff

the right to be safe away from foreseeable health problems under

the First and Eighth Amendments of the United States Constitution

and constituted a denial of religious worship under New York

State Law and Constitution, as well as, DOCCS Directive, DOCCS

Employee Manual, Human Rights Law, and Correctional Law.

3) The failure to take action to curb the physical abuse

of plaintiff by MASON, TAFT, DENNY, SOULIA, and FRENCH violated

plaintiff's right under the Eighth Amendment of the United States

Constitution and constituted a failure to protect claim under

New York State Law and Consitution, as well as, Correctional

Law, Human Rights Law, DOCCS Dircetive, and DOCCS Employee Manual.

4) SOULIA, TAFT, DENNY, MASON and BLEAU actions in failing

to provide adequate medical care or ignoring plaintiff's request

for medical care or preventing plaintiff from seeking medical

care violated plaintiff's right under the Eighth and First Amendments

of the United States Consitution.

5) Due to defendants actions plaintiff is entitled to

prejudgment interest, cost of copies, cost related to prosecuting

the action, and all attorney fees.

B. AWARD COMPENSATORY DAMAGES IN THE FOLLOWING AMOUNTS:

1) $350,000.00 jointly and severally against TAFT, MASON,

FRENCH, DENNY, and SOULIA for the physical, mental, spiritual,

and emotional injuries subtained as a result of the plainitff's

beating and strangulation.

2) $200,000.00 jointly and severally against FRENCH,and
MASON and DEYO for deprivation of free exercise of religion and
spiritual closeness to Allah(God), and emitional injury resulting
from their actions together or seperately of turning plaintiff's
water to his sink and toilet and keeping it off after being made
aware of the injuries that is causing plaintiff, and denying
plaintiff his right to attend service and be on his post as required
by his faith.

3) $75,000.00 jointly and severally against MASON, TAFT,DENNY,
SOULIA, FRENCH, and BLEAU for the physical and emotional injuries
resulting from their failure to provide adequate medical care
or assist plaintiff in obtaining adequate medical care for all
of his injuries substained during the excessive of May 25,2017.

4) $12,000.00 against BLEAU for violating the HIPPA Law

5) As for all other claims this court determines upon review
of this complainti and attach papers, plaintiff asks for $400,000.00
jointly and severally against all defendants in this action.

C.AWARD PUNITIVE DAMAGES IN THE FOLLOWING AMOUNTS:

1)$75,000.00 each against MASON, DENNY, TAFT, SOULIA, and
FRENCH:

2) $10,000.00 each against defendants MASON, BLEAU, AND
TAFT:

3) $10,000.00 each against defendants HOLLAND and STEWART.

4) $10,000.000 against BLEAU;

D. AWARD PREJUDGMENT INTEREST AGAINST ALL DEFENDANTS.

F. Grant such other relief as it may appear that plaintiff
is entitled to.

Signed this 20 day of May, 2020

_____

Clifton Little aka Clifton X

PRO SE PLAINTIFF

I declare under penalty of prejury that the foregoing is true and correct.

_____

Clifton Little aka Clifton X

PRO SE PLAINTIFF

> Clifton Little
> aka Clifton X
>
> 14A0447-DIN
>
> Washington Corr. Facility
>
> P.O. Box 180
>
> 72 Lock Eleven Lane
>
> Comstock, NY 12821-0180

I declare under penalty of prejury that on 20 day of May, 2020, I delivered this complaint to prison authories at Washington Corr. Facility to be mailed to the Clerk of Court of the United States District Court for the Northern District of New York located at 100 S. Clinton Street, P.O. Box 7367, Syracuse, New York 13261-7367.

_____

Clifton Little aka Clifton

PRO SE PLAINTIFF

GRIEVANCE COMPLAINT

CHARLES LITTLE #14A0447
D-3-32
DATED: May 29, 2017

Re: Staff Misconduct by way of unnecessary use of force/excessive use of force resulting in injury to grievant; sink and toilet being deliberately turned off for 3 days consecutively; denial of religious rights; denial of reasonable medical care and attention; and harassment

On May 25, 2017 @ approx. 7pm, C.O. E. Taft, Sgt. B. Mason, and three other John Doe C.O.'s entered my cell (D-3-32) and physically assaulted me which caused me to have an asthma attack, and bruises to my left rib cage, pain in my lower back and a hole in the neck area of my personal red sweatshirt. After I was kicked, chocked, slammed and punched repeatedly for approx. 5 minutes in which I screamed for help and gasped for air, I went unconscious. When I somewhat come to it, I found myself handcuffed, extremely tight, to where blood circulation to my hands and wrist were cut off and my legs were limp and I was being chocked by Sgt. Mason and told by him if I say anything to anyone I will be "oranged taped and painted" and then "Killed". He also stated "I will make it seem like you refused a direct order, had a weapon and tried to use it on one of my officers.". then he let go of his death grip on my throat. Then I was dragged out my cell to the back of 3 company and assaulted again by C.O. Taft and Sgt. Mason and told to only report to medical that I used my asthma inhaler and had no other injuries. I did as instructed fearing if I speak on the other injuries I sustained Sgt. Mason and C.O. Taft would attempt to kill me. Further, on 5/25/17 @ approx. 7pm, Sgt. Mason had my water to my skin and toilet turned off. On 5/26/17 I spoke with Sgt. Mason while being in medical for an emergency about my skin and toilet being turned off and he stated "he had the East Side on the next tour and he'll turn it on then" and I expressed to him that I could not perform (salat) prayer as I am required to by my religious beliefs and if I don't I won't be accepted into the hereafter and he stated "Oh, your muslim (laughing) and left." My sink and toilet stayed turned off from 5/25/17 @ approx. 7pm through and until 5/28/17 @ approx. 8pm. When I went to medical on 5/26/17 on the 7-3pm tour with sharp stabbing chest pains I was given ibuprofen though my blood pressure showed to be very high and I complained about the injuries to my back, wrist and both hands.

On May 28, 2017, my cell was searched in retaliation for me complaining to medical about my injuries. John Doe C.O. working the 7-3pm tour of duty in D-Block on 3 company who was also involved in the on 5/26/17 assault on me on 5/25/17 notified me that complaining got your another search, next time you know what we told you on Thursday (5/25/17) so don't push your luck!

Action Requested: To be provided proper medical care for my injuries and that all my medical complaints be documented in my medical file. That the assault mentioned above be reported to the Commissioner of DOCCS, Clinton County D.A., and O.S.I. And Sgt. Mason, C.O. Taft and the three John Doe C.O.'s be suspended pending the determination of this grievance and no more retaliatory acts being taken against me by any staff in this facility. I further request to be compensated for all the above.

000100
①

CC: Matthew Wasserman, Esq.
11 Park Place, Suite 1601
NY, NY 10007;
Personal File;
Attorney General Office;
Karen Bellamy Dir. of Grievance;
O.S.I.; Anthony Annucci, Acting
DOCCS Commissioner; M. Kirkpatrick
Clinton C.F. Supt.; Andrew Cuomo
NYS Governor; Clinton County
D.A.

Respectfully Submitted,

C. Little

Clifton Little
aka Charles Little
#14A0447
D-3-32
Clinton C.F.
P.O. Box 2001
Dannemora, NY 12929

# AFFIDAVIT OF WITNESS

State of New York)
                 )
                 ) SS:
                 )
County of Clinton)

I Jeffrey Ortiz (11A0877), being duly sworn, deposes and says:

I am writing this Affidavit of Witness in support of Charles little claim of being assulted.

I Jeffrey ortiz am currently an inmate at clinton correctional Facility PO box 2001 Dannemora NY 12929.

## Statement of facts

1) on the date of 5/25/17 and Approx. time 7 PM I Jeffrey ortiz witness and heard 5 CO'S and a Sargent assulted (D-3-32) charles little.

2) I heard him (Charles little) screaming for them to stop and I didn't hear him for about 3 min....

3) then I heard him gasping for air and say "I can't breath, I feel dizzy.

4) then I heard the CO tell him "Shut your cock holster before we kill you". 000102

5) then I seen them dragged him out his cell and slam him against the gate very hard and I seen Charles little body go limp.

6) then I saw the officers dragged him to the back of the company.

7) then I heard Charles little screaming for them to stop assaulting him.

8) then I heard the co tell him you better not tell anyone what happen or we will kill you and make it seem like you tried to attack us.

9) then I seen the co's dragged Charles little past my cell and his body looked lifeless while he was being dragged to the front of the company and I notice that his red sweater had a ripped hole on the left top corner.

10) I Declare that all statement were made upon my personal knowledge are frist hand accounts of all stated herein under sign and under penalty and perjury.


Witness Signature _____
Witness print  Jeffrey artic
Witness DIN#  11.A0877
Witness Date  5/25/17

000103

# Grievance Complaint

Charles Little #14A0447
B-2-9
April 12, 2018                    Incident Date: 4-12-18

### Re: Denial of Religious Services / Discrimination / Retaliation

At approx. 6:45am during the "go around" I requested that John Doe C.O. working on 2 company of B-Block place me on the list for Breakfast and N.O.I. service. I was let out my cell for Breakfast and not for N.O.I. service. When said C.O. was making the "go around" for lunch and pm programs I asked him why I wasn't let out for N.O.I. service and said C.O. informed me that he did not let me out because I grieved "his buddy Taft" and that he "hates people that are Black Muslims." I asked to speak to the area supervisor and was told that I could not.

Action Requested: John Doe C.O. be brought up on departmental employee charges for being in violation of the Federal and state Const. and laws, as well as, Doccs Directives and the Employee Manual. I ask that he be reprimanded for his retaliatory acts and be removed from working with the inmate population. I further request that he be suspended for 14 days without pay or lose 7 vacation days as a result of his willful actions that deprived me of my rights. I ask that this grievance be apart of his disciplinary file and the open government.

Respectfully Submitted,

Grievant
Without Prejudice

Grievance Complaint

CL-73438-18

RECEIVED
APR 17 2018
IGRC CLERK

(49) alleges mail tampering by CO

Charles Little #14A0447
B-2-9
April 12, 2018

Incident Date: April 6, 2018

Re: Mail Tampering/Retaliation

C.O. E. Taft on 4/6/18 at approx. 8:05pm came to my cell with a memorandum dated 4/5/18 from C. Gregory, IGP Supervisor. Said C.O. removed said document from his pocket, the document was folded, and gave it to me. In said document it declared that my complaint dated 5/29/17 was being returned to me.

Mail was handed out at approx. 3pm that day, so C.O. E. Taft should not have had my mail, especially a document which had a complaint attached to it that complained about him using excessive force on me on May 25, 2017 in D-3-32. I did not receive the complaint dated 4/29/17 back at all though the memo. specifically stated that it will be returned.

C.O. E. Taft did inform me that my complaint dated 4/29/17 will never be filed, like it was not filed in the pass (referring to John Doe C.O. not placing the complaint in question in the mailbox to IGRC)

Action Requested: C.O. E. Taft be suspended and further repremanded for his actions, as well as, reported to the USPS Marshall for mail tampering. I further request that my complaint dated 4/29/17 be returned back to me and that any IGRC responces be sent to me through legal mail in which I can sign for it. I do request compensation for my injuries.

Respectfully Submitted,

[signature]

Grievant

CC: Personal File

Received

APR -5 2018

Inmate Grievance
Supervisor

April 3, 2018

Dear Sir/Madam,

My name is Charles Little #14A0447, B-2-9

I am writing this correspondence pursuant to the advice of

D. McIntosh, DSP/Acting Supt. in a Memorandum dated April 2, 2018
in which it was advised that I re-submit the enclosed grievance
for a third time to the T6T because "They are in a better position
to investigate."

I have failed to obtain a response to this enclosed
grievance twice already and even sought to appeal it to the previous
Supt. Mr. Kilpatrick and CORC as being unresponsive had him not
received responses from either.

I also sent this grievance for a second time to this office
and be not received a response. Now for this third time I am seeking
to have this grievance filed and exercise my 1st Amend. U.S. Const.
rights to seek redress of my grievance.

I Thank you in advance for honoring my herein request
and notification that the enclosed grievance has in-fact been filed.

Respectfully Submitted,

Charles Little
Griev/Appellant

C.F. Personal File;
Mandy Jaramillo, Esq.;
D. McIntosh, DSA/Acting Supt.;
T. Bell, Supt.

APR - 2 2018

SUPERINTENDENT'S OFFICE

March 30, 2018

Dear Supt. E. Bell:

My name is Charles Little #14A0447, B-2-9. On May 29, 2017 I handed John Doe C.O. working in D-Block as the "A man or 1st Man" several envelops containing the enclosed grievance addressed to multiple parties, not limited to I.G.R.C. It was brought to my attention upon returning back from court and being placed in LF block by a John Doe Sgt. K who was investigating another grievance that said C.O. did not place my grievance in the mailbox, specifically, the envelop addressed to I.G.R.C.

I wrote I.G.R.C. and then Supt. M. Kirkpatrick several correspondences about this matter and none of the offices responded. I did ask that it be appealed to the second and third level of the I.G.R.C. and yeild no response still.

Two weeks ago I sent another copy of the enclosed grievance dated May 29, 2017 to I.G.R.C. and have not heard a response.

Therefore, I respectfully request that you exercise your inheritant power as the Superintendent of this facility and honor the enclosed grievance and provide the request for relief stated herein.

If this cannot be accomplished for whatever reason I ask that you provide a detailed reason of why and provide me the name(s) and address in which I can file an appeal.

Thank you for your consideration.

Respectfully Submitted,

CC: Personal File

Grievant/Appellant

Charles Little AKA

Clifton Little

#14A0447 B-2-9

000099