UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
CHARLES LITTLE also known as CLIFTON LITTLE,

                    Plaintiff,

- against -

TREVAR A. SOULIA, et al.,

                    Defendants.
--------------------------------------------------------------X

9:19-CV-263
(TJM/TWD)


PLAINTIFF'S POST-HEARING MEMORANDUM OF LAW


THOMAS, DROHAN, WAXMAN, PETIGROW & MAYLE LLP
2517 ROUTE 52
HOPEWELL JUNCTION, NEW YORK  12533
(845) 592-7000

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

PRIOR PROCEEDINGS .........................................................................................................2

EXHAUSTION HEARING .....................................................................................................3

ARGUMENT ...........................................................................................................................3

        BASED ON THE HEARING RECORD, DEFENDANTS HAVE NOT SUSTAINED THEIR BURDEN TO SHOW THAT PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR A FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

A.    Overview of the PLRA's Exhaustion Requirement .............................................3

B.    The Evidence Establishes that Plaintiff Reasonably Attempted to
Exhaust Administrative Remedies. .....................................................................4

C.    The Evidence Fails to Establish that the IGP at Clinton CF was
Available to Plaintiff. ..........................................................................................7

CONCLUSION .......................................................................................................................10

**TABLE OF AUTHORITIES**

**CASES**                                                                                                                             **Page(s)**

Coleman v. Nolan,
   No. 9:15-cv-040 (ATB), 2018 U.S. Dist. LEXIS 169979
   (N.D.N.Y. Oct. 2, 2018)...................................................................................................7

Curtis v. Bola,
   No. 9:15-cv-718 (GLS/TWD), 2017 U.S. Dist. LEXIS 196087
   (N.D.N.Y. Nov. 28, 2017), report and recommendation adopted 2018 U.S.
   Dist. LEXIS 742 (N.D.N.Y. Jan. 3, 2018) .......................................................................8

Daum v. Devlin,
   No. 9:15-cv-1083 (DNH/DJS), 2019 U.S. Dist. LEXIS 189221
   (N.D.N.Y. Oct. 30, 2019), report and recommendation adopted 2019 U.S.
   Dist. LEXIS 217910 (N.D.N.Y. Dec. 19, 2019)..............................................................8

Grant v. Kopp,
   No. 9:17-cv-1224 (GLS/DEP), 2019 U.S. Dist. LEXIS 1758
   (N.D.N.Y. Jan. 3, 2019), report and recommendation adopted 2019 U.S. Dist.
   LEXIS 14368 (N.D.N.Y. Jan. 30, 2019)..........................................................................7

Hamlett v. Stotler,
   No. 9:17-cv-939 (GLS/TWD), 2019 U.S. Dist. LEXIS 142026
   (N.D.N.Y. Aug. 15, 2019), report and recommendation adopted 2019 U.S.
   Dist. LEXIS 154525 (N.D.N.Y. Sept. 11, 2019) .............................................................8

Johnson v. Testman,
   380 F.3d 691 (2d Cir. 2004)............................................................................................3

Jones v. Bock,
   549 U.S. 199 (2007).........................................................................................................3

Key v. Toussaint,
   660 F. Supp. 2d 518 (S.D.N.Y. 2009)..............................................................................3

Little v. Soulia,
   No. 9:19-cv-263 (TJM/TWD), 2021 U.S. Dist. LEXIS 113161
   (N.D.N.Y. June 16, 2021) ................................................................................................2

Porter v. Nussle,
   534 U.S. 516 (2002).........................................................................................................3

Poulos v. Grimaldi,
   No. 9:18-cv-1279 (GTS/ML), 2022 U.S. Dist. LEXIS 10025
   (N.D.N.Y. Jan. 19, 2022)..............................................................................................3, 9

Ross v. Blake,
    578 U.S. 632 (2016) .................................................................................................... 4, 8-9

Smith v. Dodge,
    No. 9:18-cv-1066 (MAD/TWD), 2022 U.S. Dist. LEXIS 9397
    (N.D.N.Y. Jan. 19, 2022) (report and recommendation) ........................................ 6-7

**STATUTES**

Prison Litigation Reform Act ("PLRA"),
    42 U.S.C. § 1997e(a) ................................................................................................ passim

## PRELIMINARY STATEMENT

Plaintiff CLIFTON LITTLE (a/k/a CHARLES LITTLE), by his attorneys, THOMAS, DROHAN, WAXMAN, PETIGROW & MAYLE, LLP, submits this post-hearing memorandum of law in opposition to Defendants' motion to dismiss Plaintiff's claims pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), for an alleged failure to exhaust his available administrative remedies. As discussed below, failure to exhaust under the PLRA is an affirmative defense for which Defendants bear the burden of proof, and the record developed during the exhaustion hearing fails to establish that the inmate grievance program ("IGP") at Clinton Correctional Facility ("Clinton CF") was available to Plaintiff.

In particular, the testimony and the exhibits introduced at the exhaustion hearing show that Plaintiff timely drafted an inmate grievance, on or about May 29, 2017, concerning the incidents from May 25, 2017 to May 28, 2017 that gave rise to several of the § 1983 claims in this action. With a grievance in hand on May 29, 2017, and with every incentive to exhaust the procedure provided for under the IGP, there was no logical reason for Plaintiff to then fail to file his grievance. Indeed, Plaintiff's testimony and the exhibits lay out each step Plaintiff took to get his grievance considered, in accordance with the IGP directive, by the inmate grievance resolution committee (the "IGRC"), the facility superintendent, and the Central Office Review Committee ("CORC").

The hearing record also supports a reasonable inference that prison employees, correction officers ("CO"), and/or IGP employees, thwarted Plaintiff's use of the IGP. Notably, Plaintiff credibly testified about threatening statements made by COs that implied that the grievance had been purposely withheld from the IGRC. Additionally, Plaintiff's need to refile an earlier grievance, and the lack of any response to letters he sent to the IGP supervisor in June and July

1

2017, provide a reasonable basis to conclude that the IGP at Clinton CF in 2017 was dysfunctional and nonresponsive. Under either scenario, the administrative remedies that are promised by the IGP were unavailable to Plaintiff, notwithstanding his reasonable efforts to submit his grievance, and his claims should therefore not be dismissed under the PLRA.

### PRIOR PROCEEDINGS

On February 25, 2019, Plaintiff commenced the present § 1983 action alleging, inter alia, that COs at Clinton CF violated his constitutional rights by subjecting him to excessive force, preventing him in the free exercise of his religious beliefs, and retaliating against him for the exercise of his First Amendment rights. Following the close of discovery, Defendants moved for summary judgment dismissing Plaintiff's complaint in its entirely. Regarding claims arising from incidents in May 2017, including an alleged assault at the hands of Defendants on May 25, 2017, Defendants argued that dismissal was required because Plaintiff had failed to exhaust his administrative remedies, i.e., the IGP, as required by the PLRA.

On June 16, 2021, United States Magistrate Judge Thérèse Wiley Dancks issued a report and recommendation finding that issues of fact existed as to whether the grievance program was available to Plaintiff and whether Plaintiff attempted to exhaust his administrative remedies. See Little v. Soulia, No. 9:19-cv-263 (TJM/TWD), 2021 U.S. Dist. LEXIS 113161, at *22-*23 (N.D.N.Y. June 16, 2021). Magistrate Judge Dancks also found that issues of fact precluded summary judgment on Plaintiff's First Amendment retaliation claim, a claim which had been exhausted. Id. at *54. No objections were filed to the report and recommendation, which was subsequently adopted by the Court on October 2, 2021 (ECF No. 83).

### EXHAUSTION HEARING

The exhaustion hearing was held over two days at the federal courthouse in Albany. On

June 16, 2022, Defendants offered the testimony of two Clinton CF COs (James Stewart and Jason Holland), the Director of the Incarcerated Grievance Program (Rachael Seguin), and the supervisor of the IGP at Clinton CF (Christine Gregory). That same day, Plaintiff offered the testimony of Matthew Wasserman, an attorney formerly employed by the Office of the Appellate Defender who had represented Plaintiff in connection with a criminal appeal in May and June 2017. On November 17, 2022, the exhaustion hearing resumed, and the Court received Plaintiff's testimony.

The transcripts of the two days of the exhaustion hearing are separately numbered. Therefore, the hearing transcripts are referred to herein as "6/16/22 Tr." and "11/17/22 Tr.", respectively.

## ARGUMENT

**BASED ON THE HEARING RECORD, DEFENDANTS HAVE NOT SUSTAINED THEIR BURDEN TO SHOW THAT PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR A FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.**

**A.    Overview of the PLRA's Exhaustion Requirement**

As the Court is aware, the PLRA requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. "The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The failure to exhaust administrative remedies is an affirmative defense that must be raised by the defendants, see Jones v. Bock, 549 U.S. 199, 216 (2007); Johnson v. Testman, 380 F.3d 691, 695 (2d Cir. 2004), and it is the defendants' burden to prove that the plaintiff failed to exhaust his available administrative remedies. See, e.g., Poulos v. Grimaldi, No. 9:18-cv-1279 (GTS/ML), 2022 U.S. Dist. LEXIS 10025, at *10 (N.D.N.Y. Jan. 19, 2022); Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009).

3

However, an inmate's failure to exhaust administrative remedies should be excused if those remedies were unavailable to the inmate.  See Ross v. Blake, 578 U.S. 632, 642 (2016).  As the Supreme Court explained, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  Id.  The Court in Ross identified three potential circumstances where an inmate's administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 643-44.

**B.    The Evidence Establishes that Plaintiff Reasonably Attempted to Exhaust Administrative Remedies.**

The record developed at the exhaustion hearing demonstrates that, on or about May 29, 2017, Plaintiff actively sought to file a timely grievance concerning the incidents (including the alleged assault on May 25, 2019) that are the basis for the claims in this action.  Further, the record demonstrates that, after he had received neither an acknowledgment nor a determination from the IGRC, Plaintiff sought to exhaust each step of the grievance process, by writing the IGP supervisor at Clinton CF and requesting an appeal of the apparent denial of his grievance first to the Superintendent and then to the CORC.

Significantly, the evidence establishes that Plaintiff authored a handwritten grievance on May 29, 2017, concerning the alleged assault on May 25, 2017 and his inability to perform prayers after water to his cell was cut off (see Ex. P-2).  The existence of this grievance on May 29, 2017 has not only been attested to by Plaintiff (see 11/17/22 Tr. 7:24-8:6), but its existence on or about that date is corroborated by its reference in a letter to Plaintiff's attorney which was undeniably

received by the attorney's office on June 8, 2017 (see Ex. P-3; 6/16/22 Tr. 68:1-12). Defendants have offered no evidence to refute Plaintiff's assertion that he drafted this grievance on May 29, 2017.

It is further undisputed that Plaintiff was familiar with the IGP procedure at Clinton CF, because he had filed other grievances in 2016 and 2017 (see Ex. P-18), including a grievance regarding access to keeplock recreation at the end of May 2017 (see Exs. P-8, P-18). Plaintiff had every incentive to timely file his grievance and exhaust his administrative remedies, not the least of which was to protect his ability to pursue legal action against COs who allegedly assaulted him on May 25, 2017. Given Plaintiff's familiarity with both the IGP process and the benefits to him in exhausting his administrative remedies, there is simply no rational basis to believe that Plaintiff simply neglected to timely file the May 29, 2017 grievance, which appears to be Defendants' theory.

While there is clearly a sharp disagreement between the parties whether Plaintiff attempted to mail his grievance to the IGRC, with Plaintiff alleging that he gave the grievance to CO Stewart to be mailed (see 11/17/22 Tr. 9:17-18) and CO Stewart testifying that it was not his job to collect inmate mail (see 6/16/22 Tr. 8:10-14), there are objective reasons to credit Plaintiff's assertion that he gave his grievance to CO Stewart to be mailed. First, it is undisputed that, on May 29, 2017, Plaintiff was on keeplock status (see Ex. P-7), which prevented him from placing the grievance in the mail receptacle himself (see 11/17/22 Tr. 9:17-18). Further, the D-Block logbook identifies CO Stewart as the "1st Officer on Duty" for the afternoon shift on May 29, 2017 (see Ex. P-17), and CO Stewart was thus present in the housing block at the time Plaintiff says he gave him the grievance to be mailed. Plaintiff was able to testify in detail about the steps followed by COs in receiving mail from inmates, including confirmation of the inmate's identification (see 11/17/22

5

Tr. 11:3-12, 43:5-44:1). Finally, one of the envelopes Plaintiff gave CO Stewart on May 29, 2017 contained a letter and copy of the grievance addressed to Matthew Wasserman at the Office of Appellate Defender (see 11/17/22 Tr. 11:15-18), and this letter was in fact received by Wasserman a few days later (see Ex. P-3).

The record also establishes that Plaintiff took further action to pursue his grievance after he failed to receive a response from the IGRC. He first attempted to contact the IGP supervisor by letter dated June 17, 2017 inquiring about the status of the grievance (see Ex. P-4), and then sought to administratively appeal the apparent denial of his grievance, first to the Superintendent and then to the CORC (see Exs. P-5, P-6; 11/17/22 Tr. 13:20-24, 15:2-9). These efforts were futile insofar as Plaintiff continued to receive no response (see 11/17/22 Tr. 15:14, 16:8).

With a change in the position of superintendent of Clinton CF in 2018, Plaintiff sought the intervention of the new superintendent in order to have his grievance heard (see Ex. P-10; 11/17/22 Tr. 21:2-10). After Superintendent Bell advised Plaintiff to submit his grievance to the IGP office (see Ex. P-11), Plaintiff complied and submitted his grievance once again to the IGP at Clinton CF, and specifically highlighted his earlier submissions and the lack of a response (see Ex. P-12). However, once again review under the IGP was denied Plaintiff, with the grievance rejected as untimely on the same day it was received (see Ex. P-13).

During cross-examination, it was implied by Defendants' attorney that the Plaintiff should have grieved the fact that the Plaintiff's May 29, 2017 grievance was rejected as untimely, when he received the IGP director's response (see 11/17/22 Tr. 57:8-9). Plaintiff answered that he was unaware that an inmate could file such a grievance, as this procedure is not mentioned in the IGP directive (see Ex. P-1; 11/17/22 Tr. 57:12-15). See Smith v. Dodge, No. 9:18-cv-1066 (MAD/TWD), 2022 U.S. Dist. LEXIS 9397, at *39-*40 (N.D.N.Y. Jan. 19, 2022) (report and

6

recommendation) ("Defendants and their witnesses may be correct that Plaintiff could have or should have appealed his unfiled grievances to CORC, requested an extension of time within which to re-file them, or filed new grievances regarding the alleged failure to timely file his earlier grievances, but the process to do so is confusing that, in effect, the Court finds remedies are deemed not available in this situation.").

In sum, the hearing record demonstrates Plaintiff's reasonable and repeated efforts to utilize the IGP as it is described in the IGP directive (see P-1), and to have his complaint about Defendants' actions in May 2017 heard by the IGRC and the other entities charged with reviewing inmate grievances.

**C.    The Evidence Fails to Establish that the IGP at Clinton CF was Available to Plaintiff.**

The burden of proving by a preponderance of the evidence that the plaintiff had available administrative remedies and failed to exhaust them remains, at all times, with the defendants. See, e.g., Grant v. Kopp, No. 9:17-cv-1224 (GLS/DEP), 2019 U.S. Dist. LEXIS 1758, at *12 (N.D.N.Y. Jan. 3, 2019), report and recommendation adopted 2019 U.S. Dist. LEXIS 14368 (N.D.N.Y. Jan. 30, 2019).  It is not the plaintiff's burden to establish exactly how a failure of the IGP occurred. See Coleman v. Nolan, No. 9:15-cv-040 (ATB), 2018 U.S. Dist. LEXIS 169979, at *26 (N.D.N.Y. Oct. 2, 2018) ("[T]here is no way plaintiff could know how his grievances disappeared, because inmates at Clinton [CF] were not in a position to monitor what happened during mail pick-up, sorting, or delivery.").

As discussed above, the hearing record establishes that Plaintiff drafted a timely grievance (see Ex. P-2) and actively sought to get his grievance to the IGRC for a determination.  However, the hearing record fails to establish by a preponderance of the evidence that review under the IGP was actually available to Plaintiff.  Indeed, there is evidence to show one or more of the scenarios

identified in Ross—a grievance procedure that operates as a "dead end"; an opaque administrative scheme; and actions by prison employees to prevent the use of a grievance program—existed at the time Plaintiff sought to get his May 29, 2017 grievance heard. See Ross, 578 U.S. at 643-44.

First, there is evidence that either the mail system at Clinton CF or the IGP at Clinton CF itself did not work as intended. Plaintiff's letters to the IGP supervisor regarding the status of his grievance, including those that he himself placed in the mail receptacle, either failed to arrive at the supervisor's office or were simply ignored (see Exs. P-4, P-5, P-6; 11/17/22 Tr. 14:22-24, 15:12-14, 16:6-8). The fact that grievances and inmate correspondence sent to the IGP office at Clinton CF in 2017 "did not end up where they should have[,]" is evidence that the IGP at Clinton CF was not available to Plaintiff. Daum v. Devlin, No. 9:15-cv-1083 (DNH/DJS), 2019 U.S. Dist. LEXIS 189221, at *17 (N.D.N.Y. Oct. 30, 2019), report and recommendation adopted 2019 U.S. Dist. LEXIS 217910 (N.D.N.Y. Dec. 19, 2019). See also Hamlett v. Stotler, No. 9:17-cv-939 (GLS/TWD), 2019 U.S. Dist. LEXIS 142026, at *24-*26 (N.D.N.Y. Aug. 15, 2019) (finding that the inmate grievance program at Clinton CF was effectively unavailable to an inmate who, in two instances, filed grievances which were not received), report and recommendation adopted 2019 U.S. Dist. LEXIS 154525 (N.D.N.Y. Sept. 11, 2019). See also Curtis v. Bola, No. 9:15-cv-718 (GLS/TWD), 2017 U.S. Dist. LEXIS 196087, at *36-*37 (N.D.N.Y. Nov. 28, 2017) (concluding that where an inmate's appeals to CORC, for reasons unknown to him and through no fault of his own, did not end up in the Clinton CF inmate grievance program files or with CORC, the result effectively rendered the administrative remedies unavailable), report and recommendation adopted 2018 U.S. Dist. LEXIS 742 (N.D.N.Y. Jan. 3, 2018).

Additional evidence of dysfunctionality can be found in the handling of Plaintiff's May 2017 grievance regarding his access to keeplock recreation (see P-8). Not only was Plaintiff

8

required to refile this grievance after he received no response to an earlier grievance on this issue (see 11/17/22 Tr. 16:20-24, 19:1-6), the refiled grievance was apparently not accepted by the IGP until June 2, 2017 and the IGP proceeded to investigate the availability of keeplock recreation on the upper F block (or "UF") when Plaintiff had complained about his access to keeplock recreation on the lower F block (or "LF") (see 11/17/22 Tr. 20:6-14).

Further, as other courts have found, the IGP directive (see Ex. P-1) does not spell out what an inmate is required to do if he receives no response from the IGRC or the IGP supervisor (see 11/17/22 Tr. 15:2-9). This scenario was clearly not discussed during inmate orientation at Clinton CF (see 11/17/22 Tr. 39:3-7). While Plaintiff took reasonable steps to pursue his grievance after he received no response from the IGRC or the IGP supervisor (see, e.g., Ex. P-6), his actions were guided by guesswork, rather than language in the IGP directive (see 11/17/22 Tr. 15:2-9). Thus, the IGP procedures should be found to sufficiently "opaque" as to make the IGP's administrative remedies unavailable to Plaintiff. See Ross, 578 U.S. at 643-44; Poulos, 2022 U.S. Dist. LEXIS 10025, at *12-*13.

Finally, Plaintiff testified regarding multiple threats he received from COs concerning his use of the IGP. CO Taft, one of the officers involved in the alleged assault on May 25, 2017, delivered the IGP supervisor's response to Plaintiff's effort to refile the grievance in April 2018, and informed Plaintiff in substance that "this grievance was not going to be filed" and that, if Plaintiff continued to pursue a grievance, "it will cause more problems" (see 11/17/22 Tr. 25:14-18). Plaintiff testified regarding additional threats he received from other prison officials—Sergeant Mason, Sergeant Holland, and CO Denny—concerning his complaints about the alleged assault on May 25, 2017 (see 11/17/22 Tr. 28:6-12, 28:21-25). Sergeant Holland expressly told Plaintiff that "those types of grievances don't go through because . . . family stick together" (see

11/17/22 Tr. 28:23-25). These statements support a reasonable inference that prison officials at Clinton CF purposely disregarded or discarded grievances regarding assaults and the use of force, i.e., "those types of grievances". Indeed, in contrast to the absolute silence that Plaintiff received in response to the May 29, 2017 grievance, other grievances Plaintiff made at Clinton CF concerning matters other than employees' use of force were at least logged into the IGP system and responded to (see Ex. P-18).

Accordingly, for these reasons, Defendants have not satisfied their burden on the affirmative defense of exhaustion, and the Court should deny their motion to dismiss Plaintiff's claims.

## CONCLUSION

For the foregoing reasons, and based on the testimony and exhibits received at the exhaustion hearing, Plaintiff respectfully requests that the Court decline to dismiss the claims Defendants contend are unexhausted, permit Plaintiffs' remaining claims to proceed to trial, and for such other relief as the Court deems just and proper.

Dated: Hopewell Junction, New York
December 16, 2022

THOMAS, DROHAN, WAXMAN, PETIGROW & MAYLE, LLP
Attorneys for Plaintiff
By:

_/s/_
Steven L. Banks (Bar No. 509512)
Conor C. Horan (Bar No. 703668)
2517 Route 52
Hopewell Junction, NY 12533
(845) 592-7024